FILED

98 AUG -6 PM 12: 43

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

H. WAYNE LOVE, as                }
administrator of the Estate      }
of Hailey Davis, deceased,       }
                                 }    CIVIL ACTION NO.
     Plaintiff,                  }
                                 }    CV-97-AR-1906-E
     vs.                         }
                                 }
MARY DAVIS, ET AL.,              }
                                 }
     Defendants.

ENTERED
AUG 6 1998

## MEMORANDUM OPINION

The above-entitled action is before the court on a motion for summary judgment filed by defendants, Mary Davis ("Davis"), P.L. Corley ("Corley"), Sondra Kent ("Kent"), Marsha Busby ("Busby"), and Kelly Howle ("Howle"). Plaintiff, H. Wayne Love ("Love"), acting in his capacity as administrator of the Estate of Hailey Davis ("Davis"), deceased, brings this action against defendants only in their individual capacities.

In his First Amended Complaint, Love alleges that defendants' violated 42 U.S.C. § 1983 ("§ 1983") by either acting or failing to act with deliberate indifference to Davis's constitutional rights as guaranteed by the First, Fifth, and Fourteenth Amendments. Additionally, Love asserts several claims under Alabama law. As explained more fully below, the court now concludes that defendants are entitled to summary judgment.

## I. Pertinent Undisputed Facts

On or about September 14, 1995, the Cleburne County office of the Alabama Department of Human Resources ("DHR") received a report from Judy Heard that Davis was the suspected victim of child abuse. *Kent Depo.* at 41; *First Am. Compl.* at ¶ 11. According to Heard's report, Davis had been seen at the local Alabama Power Company office and appeared to be missing hair, to have bruises on her face, and to have a cigarette burn on her shoulder. *Defs.' Exh.* 4 at 2. That same day, Busby and Kent, who are officials with DHR's Cleburne County office, began to investigate Heard's report. *First Am. Compl.* at ¶ 12.

As a part of the investigation, Busby and Kent visited Davis's home and interviewed her mother. *Kent Depo.* at 42-43. According to Busby, Davis's mother indicated that only she and Davis resided at the home. *Defs.' Exh.* 3 at 2. With respect to the bruise-like marks, Davis's mother explained that the child had a blood disease, called Henoch-Schonlien Purpura, which caused the marks. *Defs.'s Exh.* 3 at 2. Davis's mother provided Busby and Kent with medical literature that described the condition. *Defs.' Exh.* A at 5-8. According to the mother, Davis's pediatrician had diagnosed her condition. *Defs.' Exh.* 3 at 2. Busby then asked Davis's mother to have the child's doctor provide DHR's Cleburne County office with some confirmation of

2

her condition. *Id.*

Throughout the interview, Kent interacted with Davis. *Defs.' Exh. 4* at 2. According to Kent, "[t]he child appeared happy and interacted well with the mother." *Id.* Moreover, the suspected cigarette burn proved to be nothing more than a birth mark, and Kent did not detect any patches of missing hair. *Id.* at 2-3. However, in contrast to the mother's representation, a neighbor told Busby and Kent that the mother's boyfriend, Terry Thomas ("Thomas"), also resided at the home. *Defs.' Exh. 3* at 3.

On the day following the interview, Davis's mother arrived at DHR's Cleburne County office with a note written on the prescription pad of Naresh S. Purohit, M.D., whom the mother claimed was Davis's pediatrician. *Defs.' Exh. 3* at 3. The note indicated that Davis had a "medical condition" and that she was not the victim of abuse. *Defs.' Exh. A* at 4. The note also instructed DHR to contact Dr. Purohit if it had any questions. *Id.* At no time did DHR attempt to contact Dr. Purohit to confirm the authenticity of the note. *Kent Depo.* at 82.

In response to the conflicting information received from Davis's neighbor, Busby did some additional investigating concerning Thomas's residence after the interview. Busby reviewed DHR's public assistance records, but, according to those records, Davis and her mother were the household's only

3

residents. *Defs.'s Exh. 3* at 3. DHR made no further effort to ascertain whether Thomas also lived with Davis. On or about September 25, 1995, Kent determined that DHR had sufficient information to close the investigation and that the situation warranted no further action by DHR. *Defs.' Exh. A* at 9.

On or about November 26, 1995, Davis died from injuries sustained as a result of a severe beating that she received from her mother and/or Thomas on or about November 23, 1995. *First Am. Compl.* at ¶ 16-17. Davis's mother is now serving a life sentence in a state correctional facility for the murder of Davis. On June 27, 1996, the Probate Court of Cleburne County appointed Love as the personal representative of Davis's estate. *Id.* at ¶ 2. This lawsuit followed.

## II. Summary Judgment Standard

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P. In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth*

Bank, N.A., 36 F.3d 1057, 1061 (11th Cir. 1994). Defendants have invoked Rule 56.

### III. Discussion

As an initial matter, the court pauses to acknowledge Love's concession that Howle should be dismissed as a defendant. *Pl.'s Br. In Resp. to Defs.' Mot. for Summ. J.* at 12-13. In light of this concession, the court concludes that the action, insofar as it asserts claims against Howle, is due to be dismissed. For the balance of this opinion, any reference to "defendants" shall not include Howle.

#### A. Love's Due Process Claims

Love alleges, *inter alia*, that "[Davis] was caused to in connection with the deprivation of her Constitutional rights as guaranteed by the First, Fifth, and Fourteenth Amendments to the United States Constitution." *First Am. Compl.* at ¶¶ 31, 39. Love further alleges that said deprivation occurred as a result of defendants' acts and omissions vis-a-vis Davis. *Id.* at ¶¶ 18-41. Given the posture of this case, the court will not address Love's constitutional claims as they relate to either the First Amendment or the Fifth Amendment.[1] Rather, the court will limit

---

[1] It is well settled that the Due Process Clause of the Fifth Amendment does not bind state governments. Rather, it is applicable only to the federal government. *Buxton v. City of Plant City*, 871 F.2d 1037, 1041

5

its evaluation of Love's constitutional claims to an alleged deprivation of procedural due process rights under the Fourteenth Amendment.[2]

The principal thrust of plaintiff argument is that Alabama's Child Abuse Reporting Act, *as amended*, ALA. CODE §§ 26-14-1 *et seq.* (1975) ("CARA"), entitled Davis to receive protective services from the state and that the state, through its agents, wrongfully deprived her of this entitlement without due process. *Pl.'s Br. In Resp. to Defs.' Mot. for Summ. J.* at 5-7. Apparently, it is Love's contention that the CARA embodies some state-created life and/or liberty interest. This contention is not well taken.

As the Sixth Circuit has explained:

State-created liberty interests arise when a state places

---

(11th Cir. 1989) ("The fifth amendment to the United States Constitution restrains the federal government, and the fourteenth amendment, section 1, restrains the states, from depriving any person of life, liberty, or property without due process of law."). Accordingly, as neither the United States nor any of its agents is not a defendant in this action, any and all of Love's claims brought pursuant to the Fifth Amendment are due to be dismissed.
    Likewise, the court is at a loss to comprehend how the circumstances of this case, as alleged, implicate Davis's First Amendment rights in any way. Consequently, insofar as the action asserts claims pursuant to the First Amendment, it is due to be dismissed.

[2] To the extent that Love attempts to bring a claim for violations of Davis's substantive due process rights, any such claim is due to be dismissed as a matter of law. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 197, 109 S.Ct. 998, 1004 (1989) (concluding that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause"). *See also Tony L. By and Through Simpson v. Childers*, 71 F.3d 1182, 1184 n.1 (6th Cir. 1995), *cert. denied*, 517 U.S. 1212, 116 S.Ct. 1834 (1996).

> "substantive limitations on official discretion." A state
> substantively limits official discretion "by establishing
> 'substantive predicates' to govern official decisionmaking
> . . . and, further, by mandating the outcome to be reached
> upon a finding that the relevant criteria have been met."
> The state statutes or regulations in question also must use
> "explicitly mandatory language" requiring a particular
> outcome if the articulated substantive predicates are
> present. Finally, the statute or regulation must require a
> particular substantive outcome. *State-created procedural
> rights that do not guarantee a particular substantive
> outcome are not protected by the Fourteenth Amendment, even
> where such procedural rights are mandatory.*

*Tony L. By and Through Simpson v. Childers*, 71 F.3d 1182, 1185 (6th Cir. 1995) (citations omitted and emphasis supplied) (hereinafter "*Simpson*"), *cert. denied*, 517 U.S. 1212, 116 S.Ct. 1834 (1996).

As support for his argument, Love refers the court to ALA. CODE § 26-14-7 (1975). In pertinent part, that statute provides:

> The State or County Department of Human Resources **shall** make
> a thorough investigation promptly upon either the oral or
> written report [of child abuse or neglect]. The primary
> purpose of such an investigation **shall** be the protection of
> the child.

ALA. CODE § 26-14-7(a) (1975) (emphasis supplied) ("§ 26-14-7"). Clearly, as Love suggests, this statute contains language that mandates a particular procedure. Furthermore, § 26-14-7(a) requires an investigation following the occurrence of "substantive predicates," namely, a report of child abuse or neglect. However, Love's claim that a state-created life or liberty interest flows from the mandatory language of § 26-14-7 is without merit. Nothing in § 26-14-7 or, indeed, the entire

7

CARA mandates a particular substantive outcome with respect to protective services. In fact, under the CARA, the decision of whether to remove a child from her custodial environment is a matter left entirely to the discretion of DHR officials. *See* ALA. CODE §§ 26-14-6 and 26-14-7(b) (1975) (providing that DHR officials "may" assume temporary protective custody or initiate child-protective proceedings where, in their opinion, it is necessary for child's welfare). As explained above, absent a prescribed substantive outcome, a state statue or regulation does not create an interest protected by the Fourteenth Amendment. *Simpson*, 71 F.3d at 1185.

In the instant case, the requirement that DHR undertake an investigation upon receiving a report of child abuse or neglect did nothing more than give Davis an expectation of receiving certain process.[3] *Id.* at 1186. However, given that, under the CARA, child protective services are entirely discretionary, it cannot be said that the statute provided Davis with an expectation of those services sufficient to establish a life or liberty interest protected by the Fourteenth Amendment. *See id.* ("An expectation that some sort of action will be taken is not enough. **Rather, a plaintiff must have an expectation that a**

---

[3] It is undisputed that, upon receiving Judy Heard's report that Davis might the victim of child abuse or neglect, Busby and Kent immediately proceeded to investigate the domestic situation as required by the CARA.

8

*particular result will follow from a particular, required action.*") (emphasis supplied). Accordingly, the court concludes that Love's procedural due process claims are due to be dismissed as a matter of law. *See id.* at 1185-87.

### B. Love's State Law Claims

As noted above, Love brings what appear to be several state law claims against defendants. More specifically, Love alleges: (1) that Davis, Busby and Kent breached their duty to investigate a report of child abuse thoroughly; (2) that Corley, Davis and Kent negligently failed to "instruct, supervise, control and discipline on a continuing basis" their subordinates; and (3) that Busby and Kent "negligently performed their duties as professional social workers." *First Am. Compl.* at ¶¶ 43-61, 65. In response, defendants argue, *inter alia*, that they are entitled to substantive immunity from any and all state law claims. The court agrees.

According to the Supreme Court of Alabama:

> Article I, § 14, Alabama Constitution, is the basis for sovereign immunity in this state, and that section provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Under this provision, the state and its agencies have absolute immunity from suit in any court. State officers and employees, in their official capacities and *individually*, also are absolutely immune from suit when the action is, in effect, one against the state.

*Alabama State Docks v. Saxon*, 631 So.2d 943, 946 (Ala. 1994) (emphasis supplied). However, the immunity conferred by § 14 is

9

not absolute. Indeed, "a state officer or employee is not protected by § 14 when he acts willfully, maliciously, illegally, fraudulently, in bad faith, beyond his authority, or under a mistaken interpretation of the law." *Spring Hill Lighting Co., Inc. v. Square D Co., Inc.*, 662 So.2d 1141, 1148 (Ala. 1995). Nevertheless, "qualified immunity," also known under state law principles as "substantive immunity," "shields a state employee from liability if the employee is engaged in a discretionary act, instead of a ministerial one, when the alleged tortious conduct occurs." *Ex parte Ala. Dep't of Forensic Sciences*, 709 So.2d 455, 458 (Ala. 1997). "Whether a state employee's action was discretionary or merely ministerial is a question of law to be decided by the trial court." *Id.*

The Supreme Court of Alabama has described discretionary functions as follows:

> "Performance of a discretionary function requires an exercise in judgment and choice as to what is proper and just under the circumstances. It involves the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. . . . A function is discretionary when it devolves to the officer to determine whether he should perform a certain act, and, if so, in what particular way. If a public employee is required to decide and act without fixed or readily ascertainable standards, that act is a discretionary function."

*Id.* (citing 57 Am. Jur. 2d *Municipal, County, School and State Tort Liability* § 119 (1988)). In contrast, the Supreme Court of

Alabama has said that:

> "a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result. It is performed in a prescribed manner without exercise of judgment or discretion as to the propriety of the action."

*Id.* (citing 57 Am. Jur. 2d *Municipal, County, School and State Tort Liability* § 120 (1988)).

With the foregoing descriptions in mind, it is clear that defendants are entitled to substantive immunity from Love's state law claims. Indeed, none of the acts or omissions of which Love complains involved ministerial functions; rather, all involved an exercise of discretion on the part of the respective defendant or defendants. Several considerations support this view.

First, with respect to Love's claim against Davis, Busby, and Kent for breach of their duty to investigate a report of child abuse thoroughly, it well settled that, under the CARA, DHR officials have the discretion to determine what constitutes a thorough investigation. *Decatur City bd.. of Educ. v. Alcock*, 562 So.2d 1331, 1335 (Ala.Civ.App. 1990). Put another way, although DHR officials have an affirmative duty to conduct such an investigation, those officials are free to decide when the investigation is complete. Consequently, the investigation is primarily a discretionary function that shields Davis, Busby, and

11

Kent from liability for the performance of that function.[4]

Second, with respect to Love's claim against Corley, Davis, and Kent for failing to instruct and supervise their subordinates, it is equally well settled that, because supervisory and training functions require constant decision-making, they are, for the most part, discretionary. *Phillips v. Thomas*, 555 So.2d 81, 85 (Ala. 1989). As such, Corley, Davis, and Kent are immune from suit relating to the performance of such functions. *Id.*

Lastly, with respect to Love's claim against Busby and Kent for "negligently perform[ing] their duties as professional social workers," the record demonstrates that virtually every aspect of the Davis investigation called for independent judgment and decision-making by Busby and Kent. *Defs.' Exh. 3 & 4.* For example, Kent testifies in her affidavit that she closed the Davis investigation because, in her judgment, there was adequate information upon which to do so. *Defs.' Exh. 4 at 3.* As a result, Busby and Kent are immune from suit relating to their conduct during the Davis investigation.

Having determined that all of the challenged acts and

---

[4] Admittedly, an investigation of a report of child abuse or neglect includes some ministerial components. *See* ALA. CODE § 26-14-7(b) (1975) (outlining information child abuse investigations "shall" include). However, Love points to nothing in the record to demonstrate that Davis, Busby, or Kent failed to comply with the prescribed statutory guidelines.

omissions involved discretionary public functions, the court concludes that defendants are entitled to substantive immunity from any and all of Love's state law claims.

Nevertheless, even if the court were to assume, *arguendo*, that defendants were not due to receive substantive immunity, it would, for the most part, avail Love nothing. Most of Love's state law claims are premised on the alleged negligence of the respective defendants. As Love necessarily concedes, where one alleges negligence, he must establish causation in order to recover. However, aside from his conclusory allegations, Love puts forward no evidence to demonstrate that any of the challenged acts or omissions was either the cause-in-fact or the proximate cause of Davis's death. For example, Love makes no showing that, but for the failure to develop the photgraphs that were taken on the day DHR interviewed Davis's mother, the child would be alive today. Likewise, Love makes no showing that Davis's death was a foreseeable consequence of the failure to determine whether Thomas lived at her residence. Obviously, absent a showing of causation, Love has failed to meet his prima facie burden with respect to any and all of state law claims premised on negligence.

## IV. Conclusion

Without a doubt, this case is one of the most tragic with which this court has dealt in recent memory. Truly, it is hard to imagine anyone who would not experience a feeling of profound sadness over the untimely death of a small child. However, the court is bound to apply the law without regard for such sentiments. Although today's result may appear harsh and unfeeling, it reflects the court's effort to remain true to its duty. When this court instructs a jury that sympathy and public opinion have no place in the decision-making process, it tries to bear in mind that admonition.

The court will enter a separate and appropriate order in keeping with the conclusions reached hereinabove.

DONE this 6th day of August, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE